**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **WILLIAM MONDIER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 02-CV-933-TCK-SAJ** |
| | ) | |
| **LARRY FUGATE; STEVE TOLIVER;** | ) | |
| **GARY BROWN; ALLEN HARWOOD;** | ) | |
| **and RUSTY CARR,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**OPINION AND ORDER**

This is a 42 U.S.C. § 1983 civil rights action commenced by Plaintiff, a state prisoner appearing *pro se*. Plaintiff claims that his civil rights were violated while he was in custody at the Creek County Jail ("CCJ"). Plaintiff has been granted leave to proceed *in forma pauperis*. See Dkt. # 3. By Order filed April 9, 2003 (Dkt. # 7), the Court directed service by the United States Marshal and preparation of a Special Report by the facility involved in the alleged civil rights violations. On May 1, 2003, the Court issued a second Order (Dkt. # 10) directing service on Defendant Fugate using new service forms provided by Plaintiff. On June 12, 2003, Defendant Steve Toliver filed his answer (Dkt. # 18) and Defendants filed a court-ordered Special Report (Dkt. # 20), along with supporting exhibits. See Worley v. Sharp, 724 F.2d 862 (10th Cir. 1983); Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978). Plaintiff filed a "reply" to the Special Report. (Dkt. # 23). Defendants Brown, Harwood, Carr and Fugate filed a motion to dismiss (Dkt. # 17).  By Order filed July 28, 2005, the Court dismissed Defendants Larry Fugate, Gary Brown, Allen Harwood and Rusty Carr, finding that Plaintiff's complaint failed to state a claim as to those Defendants. (Dkt. # 28). Claims against Defendant Toliver, in his individual capacity, were also dismissed. Id. Plaintiff's ground one, alleging that Defendants interfered with his right to access the courts, was dismissed for failure

to state a claim.  Id.  The Court concluded that the only claims remaining in this action were

Plaintiff's requests for punitive damages and for a declaratory judgment as to grounds 2, 3, 4, and

5 against Defendant Toliver in his official capacity as Sheriff of Creek County.  Id.

On August 17, 2005, Plaintiff filed objections to the Court's Order and moved to amend his

complaint. (Dkt. #s 29 and 30). Plaintiff sought to amend his complaint in order to "mature, colorize,

make certain corrections, cure defects and state a claim of physical injury." Dkt. # 29 at 1. Defendant

Toliver filed a motion to dismiss, or alternatively, motion for summary judgment (Dkt. #s 31, 33),

together with a brief in support of the motion (Dkt. # 32). Plaintiff filed a response to the motion to

dismiss/summary judgment, with attachments including sworn affidavits (Dkt. # 41). By Order filed

March 27, 2007 (Dkt. # 45), the Court denied Plaintiff's motion to amend based on Plaintiff's failure

to provide a proposed amended complaint along with his motion as required by the Court's Local

Rules.  See LCvR9.3(c).  The Court reserved ruling on Defendant Toliver's motion to dismiss, or

alternatively, motion for summary judgment.

On April 4, 2007, Plaintiff filed objections to the Court's Order (Dkt. # 46). On April 10,

2007, he filed a second motion to amend his complaint (Dkt. # 47) and submitted his proposed

amended complaint along with his second motion to amend.  By Order filed August 6, 2007 (Dkt.

# 49), the Court granted Plaintiff's motion to amend and the amended complaint (Dkt. # 50) was

filed of record as of April 10, 2007. In a second Order filed August 6, 2007 (Dkt. # 51), the Court

dismissed Counts 1, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, and 17 of the amended complaint and

directed Plaintiff to show cause why his claim alleging deliberate exposure to hepatitis C should not

be dismissed as barred by the statute of limitations. On August 16, 2007, Plaintiff filed his objection

and response (Dkt. # 52) to the Court's order to show cause.  On October 24, 2007, the Court

directed Defendant Toliver to answer or otherwise plead to Counts 2, 3, 5, and 15, as raised in the amended complaint and to address Plaintiff's arguments concerning the timeliness of his claim of deliberate exposure to hepatitis C. (Dkt. # 53).  On December 3, 2007, Defendant filed a "motion to dismiss amended petition, or alternatively, motion for summary judgment and brief in support" (Dkt. #s 56 and 57). On January 14, 2008, Plaintiff filed a response (Dkt. # 62) in opposition to Defendant's motion.  Plaintiff has also filed exhibits (Dkt. # 64) in support of his response.  For the reasons discussed below, the Court finds Defendant's motion for summary judgment shall be granted and his motion to dismiss shall be declared moot.

### BACKGROUND

The Court previously provided a statement of the factual background of this matter in the Order filed  March 27, 2007 (Dkt. # 45).  The parties agree that Plaintiff was incarcerated at CCJ for approximately 470 days, from March 17, 2000, through June 28, 2001, mostly as a pretrial detainee (Dkt. # 32 at 1-2; Dkt. # 50).[1] After the Court's ruling of August 6, 2007 (Dkt. # 51), the following claims, as asserted in the amended complaint (Dkt. # 50), remain for disposition:

Count 2:  Plaintiff was denied adequate out-of-cell exercise in violation of the 8th Amendment.

Count 3:  Plaintiff was denied adequate medical care and was deliberately exposed to infectious and contagious diseases.

Count 5:  Plaintiff was subjected to prolonged overcrowding, mostly as a pre-trial detainee. Violations of State law 57 O.S. § 37, 8th and 14th Amendments.

Count 15:  Meal portions were small and did not consist of a nutritious and balanced

---

[1]Plaintiff was convicted by a jury in Creek County District Court, Case No. CF-2000-149, of endeavoring or attempting to manufacture methamphetamine (Count 1), possession of a controlled drug (Count 2), and maintaining a place resorted to by users of controlled drugs (Count 3).  His sentences totaled 56 years and his fines totaled $70,000.  See Dkt. # 20, Ex. D.

diet. Violations 8th and 14th Amendments.

See Dkt. # 50. As his requested relief, Plaintiff asks for "$200,000 compensatory damages plus $200,000 punitive damages, and declaratory judgment." See id. In response to the amended complaint, Defendant Toliver filed the motion to dismiss, or in the alternative, motion for summary judgment (Dkt. #s 56 and 57) presently before the Court.

### ANALYSIS

According to the Supreme Court, the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 349 (1981)). While the conditions under which a convicted prisoner is held are subject to scrutiny under the Eighth Amendment, the conditions under which a pretrial detainee is confined are scrutinized under the Due Process Clauses of the Fifth and Fourteenth Amendments.  See Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979). "Although the Due Process clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims." Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998) (citation omitted).  "The Eighth Amendment requires jail officials to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." Id. (quotation omitted).  An inmate claiming that officials failed to insure his safety "must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Plaintiff must also demonstrate that the officials had a "sufficiently culpable state of mind," that is, their acts or omission arose from

4

"deliberate indifference to inmate health or safety." Id. at 835-47 (explaining that deliberate indifference lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other"). A prison official is not liable for unsafe conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.  An official's failure to alleviate a significant or obvious risk that he should have perceived but did not, while no cause for commendation, does not constitute a violation of the Eighth Amendment. Id. at 838. Negligence on the part of prison officials does not constitute deliberate indifference. Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986).

In addition, under § 1983, a defendant may not be held liable under a theory of respondeat superior. See Worrell v. Henry, 219 F.3d 1197, 1214 (10th Cir. 2000); Gagan v. Norton, 35 F.3d 1473, 1476 n. 4 (10th Cir.1994). Instead, to establish supervisory liability, a plaintiff must show that "an affirmative link exists between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Worrell, 219 F.3d at 1214 (quoting Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir. 1988) (quotation omitted) (alternation in original)); Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir.1996).

Resolution of the issues raised in Defendant Toliver's motion requires the Court to consider matters outside the amended complaint.  Therefore, the Court shall apply the standards discussed above and adjudicate the motion as a motion for summary judgment.  Defendant's alternative motion to dismiss shall be declared moot.

**A. Summary judgment standards**

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. <u>Applied Genetics Int'l, Inc. v. First  Affiliated Sec., Inc.</u>, 912 F.2d 1238, 1241 (10th Cir. 1990). "However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." <u>Id.</u> The Court cannot resolve material factual disputes at summary judgment based on conflicting affidavits. <u>Hall v.  Bellmon</u>, 935 F.2d 1106, 1111 (10th Cir. 1991).  However, the mere existence of an alleged factual dispute does not defeat an otherwise properly supported motion for summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48  (1986).  Only material factual disputes preclude summary judgment; immaterial disputes are irrelevant. <u>Hall</u>, 935 F.2d at 1111. Similarly, affidavits must be based on personal knowledge and set forth facts that would be  admissible in evidence. <u>Id.</u> Conclusory or self-serving affidavits are not sufficient. <u>Id.</u> If the evidence, viewed in the light most favorable to the nonmovant, fails to show that there exists a genuine issue of material fact, the moving party is entitled to judgment as a matter of law.  <u>See</u> <u>Anderson</u>, 477 U.S. at 250.

Where a *pro se* plaintiff is a prisoner, a court authorized "<u>Martinez</u> Report" (Special Report) prepared by prison officials may be necessary to aid the Court in determining possible legal bases for relief for unartfully drawn complaints. <u>See</u> <u>Hall</u>, 935 F.2d at 1109.  The Court may treat the <u>Martinez</u> Report as an affidavit in support of a motion for summary judgment, but may not accept the factual findings of the report if the Plaintiff has presented conflicting evidence. <u>Id.</u> at 1111.  The

6

Plaintiff's complaint may also be treated as an affidavit if it is sworn under penalty of perjury and states facts based on personal knowledge. Id. The Court must also construe Plaintiff's *pro se* pleadings liberally for purposes of summary judgment. Haines v. Kerner, 404 U.S. 519, 520 (1972). When reviewing a motion for summary judgment it is not the judge's function to weigh the evidence and determine the truth of the matter but only to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

**B. Claim of deliberate exposure to hepatitis C is time-barred**

As part of Count 3 in the amended complaint, Plaintiff alleges, as he did in the original complaint, that he was exposed to hepatitis C as a result of Defendants' deliberate indifference. See Dkt. # 50. In support of this claim, Plaintiff alleges that he shared a cell with an inmate named Randy Ray for approximately 5-6 months. Plaintiff came into contact with Ray's blood when he had to clean up after Ray had seizures. See id. The record contains the following specific allegations concerning this claim: an "inmate/detainee named Randy Ray entered my cell No. 16 between July to November [2000][2] and was having seizures, because the jailers would not give him his medication on a daily bases (sic)." Dkt. # 41, attached Affidavit of William F. Mondier, Jr., at 7. The seizures would cause Mr. Ray to injure himself and bleed profusely. Id. Plaintiff attended to Mr. Ray's medical needs, getting blood on himself in the process. Id. Plaintiff was ordered by the jailers to "clean that blood up." Id. Mr. Ray informed Plaintiff that he had hepatitis C after he regained consciousness following a seizure and saw his blood on Plaintiff. Plaintiff alleges that he

---

[2]Although Plaintiff fails to specify the year in which he was celled with inmate Ray, Plaintiff alleges, see Dkt. # 41, attached Affidavit of William F. Mondier, Jr., at 1, and Defendant Toliver confirms that Plaintiff was in custody at CCJ from March 17, 2000, through June 29, 2001 (Dkt. # 32 at 1-2). Therefore, the only possible time frame for the allegations involving inmate Ray is July to November of the year 2000.

immediately told the Defendants Harwood, Brown and Carr, but their response was that "HCV was not contagious." Id.

The Supreme Court has held that the Eighth Amendment protects prisoners from deliberate indifference by prison officials as to conditions which pose an unreasonable risk of damage to an inmate's future health. See Farmer v. Brennan, 511 U.S. 825, 834 (1994); Helling v. McKinney, 509 U.S. 25 (1993). Plaintiff's claim that he was deliberately exposed to an unreasonable risk of serious damage to his future health falls into that category. See e.g. Herman v. Holiday, 238 F.3d 660 (5th Cir. 2001). Based upon the record provided by Defendant Toliver in support of his motion for summary judgment, however, the Court finds that Plaintiff's claim alleging deliberate exposure to Hepatitis C is barred by the applicable two (2) year statute of limitations.

No statute of limitations is expressly provided for claims under 42 U.S.C. § 1983. However, the Supreme Court has held that courts must look to state law for the appropriate period of limitations in § 1983 cases. Wilson v. Garcia, 471 U.S. 261, 266-67 (1985) (superseded by statute on other grounds). The Tenth Circuit Court of Appeals has stated that the appropriate period of limitations for § 1983 actions brought in the State of Oklahoma is two (2) years, pursuant to Okla. Stat. Ann. tit. 12, § 95(3). Meade v. Grubbs, 841 F.2d 1512, 1522-24 (10th Cir. 1988). While state law governs limitations and tolling issues, federal law determines the accrual of § 1983 claims. Fratus v. Deland, 49 F.3d 673, 675 (10th Cir. 1995); Baker v. Board of Regents, 991 F.2d 628, 632 (10th Cir.1993). A civil rights action accrues when "facts that would support a cause of action are or should be apparent." Fratus, 49 F.3d at 675 (quoting Blumberg v. HCA Management Co., 848 F.2d 642, 645 (5th Cir. 1988)); see also Johnson v. Johnson County Comm'n Bd., 925 F.2d 1299, 1301 (10th Cir. 1991). Thus, a plaintiff must bring an action within two years of the date when facts

that would support a cause of action are or should be apparent.

Plaintiff filed his original complaint on December 13, 2002.[3] Dkt. # 1. Therefore, in the absence of a tolling event, any claim which accrued before December 13, 2000, would be time-barred. Plaintiff states in his own affidavit that the events giving rise to this claim occurred while Randy Ray was housed in his cell, from July to November, 2000, see Dkt. # 41, attached Affidavit of Plaintiff at 7, or before December 13, 2000.  In his response to the Court's order to show cause, however, Plaintiff informed the Court for the first time that before he filed the complaint in this case, he had filed a civil rights complaint raising the same claims in the United States District Court for the Western District of Oklahoma. See Dkt. # 52. That complaint was dismissed without prejudice for improper venue.  See id., Ex. C.  Plaintiff provided the "Declaration Under Penalty of Perjury" for the complaint filed in the Western District reflecting the date of "11-15-02." See id. Ex. B. As a result, the Court finds that the earliest date Plaintiff raised any of the claims alleged in this matter, including the deliberate exposure to hepatitis C claim, was November 15, 2002.  See Russell-El v. United States, No. 99-1124,1999 WL 987350 (10th Cir. Nov. 1, 1999) (unpublished) (stating that the issue of tolling is governed by state law); Williams v. City of Guthrie, Oklahoma, No. 03-6212, 2004 WL 1987294 (10th Cir. Sept. 8, 2004) (unpublished). If the complaint filed in the Western District was timely, then, under Oklahoma law, see Okla. Stat. tit. 12, § 100, the filing of that complaint saved the instant action.

In the motion for summary judgment presently before the Court, Defendant Toliver presents evidence that inmate Ray was housed at CCJ from May 23-26, 2000, and from June 30, 2000 to

---

[3]After being transferred to DOC custody on June 28, 2001, Plaintiff allowed more than 17 months to pass before filing his complaint in this Court.

October 12, 2000.  The Offender Information sheet maintained by the DOC reflects that Mr. Ray was transferred to the custody of the DOC on October 12, 2000. See Dkt. # 56, Ex. C. Thus, the record indicates that the latest possible date Plaintiff could have been exposed to inmate Ray's blood at CCJ was October 12, 2000. Plaintiff offers no evidence suggesting that inmate Ray remained at CCJ beyond October 12, 2000.  That date was more than two (2) years before November 15, 2002, the earliest date Plaintiff raised any of his claims concerning the conditions of his confinement at CCJ.  Therefore, unless Plaintiff can demonstrate entitlement to any tolling of the limitations period, his claim of deliberate exposure to hepatitis C is time-barred.

In response to the motion for summary judgment, see Dkt. # 62, Plaintiff attempts to overcome the limitations bar by presenting two (2) arguments. First, he alleges that he did not know that hepatitis C could be contracted through exposure to blood until September or November 2002, when he saw a special report on CNN news. See Dkt. # 62.  Plaintiff's allegation is refuted by his own affidavit where he states that after inmate Ray informed him that he had hepatitis C, Plaintiff "immediately informed the defendants and their response was HCV is not contagious through blood." See Dkt. # 41, attached affidavit. That statement reflects that Plaintiff harbored concern at the time he came into contact with inmate Ray's blood that he had been exposed to an infectious disease. In addition, Plaintiff alleges in the amended complaint (Dkt. # 50) that inmate Ray did not tell Plaintiff that he had hepatitis C until he "woke up" from a seizure and noticed that Plaintiff had his blood on him. Those allegations of fact again reflect knowledge that hepatitis C can be transmitted by exposure to the blood of an infected person. Nonetheless, Plaintiff did not pursue his concerns. The law provides that a cause of action accrues when facts that would support a cause of action are or should be apparent. In this case, the facts supporting a cause of action should have been

apparent when Plaintiff was told by Mr. Ray that he had hepatitis C and that Plaintiff had been exposed to Mr. Ray's blood. That event occurred sometime before October 12, 2000, or more than two (2) years before Plaintiff sent his complaint to be filed in the United States District Court for the Western District of Oklahoma. The Court rejects Plaintiff's claim that his cause of action did not accrue until September or November of 2002.

Next, Plaintiff claims that his cause of action did not accrue until he was diagnosed with hepatitis C. See Dkt. # 62. The earliest date reflected in the record for Plaintiff's positive test result is April 26, 2005. See Dkt. # 52, Ex. A. Again, the Court rejects Plaintiff's argument. Plaintiff's claim is that Defendants' deliberate conduct resulted in his exposure to an infectious disease, hepatitis C. The Supreme Court has held that a prisoner may state a claim that prison officials "have, with deliberate indifference," involuntarily exposed him to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." Helling v. McKinney, 509 U.S. 25, 35 (1993). Neither development of disease symptoms nor obtaining a positive diagnosis for a specific disease is required to allege a claim of deliberate exposure to conditions that threaten future health. As stated above, Plaintiff's claim of deliberate exposure to hepatitis C accrued when he learned, while he had Mr. Ray's blood on him, that Mr. Ray had hepatitis C. At that point, Plaintiff was aware that he had suffered an injury when, without protective clothing or equipment, he was exposed to a contagious disease by cleaning up Mr. Ray's blood. Assuming without finding that Plaintiff's alleged exposure to hepatitis C at the CCJ caused him to later test positive for hepatitis C,[4] he

---

[4]The Court notes that it would appear unlikely that Plaintiff's positive hepatitis C diagnosis could be attributable to the alleged exposure at CCJ. Plaintiff's positive diagnosis occurred at least 4 ½ years after the incident at CCJ involving Mr. Ray. The medical literature provided by Defendant indicates that the incubation period for hepatitis C infection varies from 2 to 26 weeks (an average of 45 days). See Dkt. # 56, Ex. E. Nothing in the original complaint or other records provided by

learned nothing more at that time than the full extent of his injury. Therefore, because Plaintiff did not assert his claim of deliberate exposure to hepatitis C prior to October 12, 2002, the Court concludes his claim is barred by the statute of limitations. Defendant is entitled to judgment as a matter of law on this claim.

**C. Defendant Toliver is entitled to summary judgment on Plaintiff's remaining claims**

In Counts 2, 3, 5, and 15 of the amended complaint, Plaintiff alleges that while he was in custody at CCJ, he suffered from (1) insufficient out-of-cell exercise (Count 2), (2) inadequate medical care (Count 3), (3) prolonged overcrowding (Counts 2, 5, and 15), and (4) small meal portions that did not satisfy standards of nutrition (Counts 5 and 15). Plaintiff alleges that "all defendants, named, unnamed and others, were personally involved" in the alleged violations.[5] As to any claim against Defendant Toliver in his individual capacity, it is well-established that a supervisor cannot be held liable for his employees' actions based solely on his supervisory position. Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996). There must be an affirmative link between the alleged deprivation and the supervisor's control or failure to supervise. Worrell v. Henry, 219 F.3d

_____

Plaintiff indicate he had suffered any symptoms associated with hepatitis C at the time he filed the complaint, more than two (2) full years after the alleged exposure at CCJ.

[5]The Court previously dismissed Plaintiff's claims against defendants Brown, Harwood, and Carr, as asserted in the original complaint, based on failure to state a claim and because Plaintiff had otherwise failed to identify how those Defendants were involved in the violations of his rights. Defendant Fugate was dismissed after two (2) failed service attempts. Although Plaintiff makes the conclusory statement that "all defendants . . . were personally involved" in the violations alleged in the amended complaint, the Court finds that Plaintiff has failed to allege facts sufficient to state a claim against the previously dismissed defendants. Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997) ( "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."); Jenkins v. Wood, 81 F.3d 988, 994-95 (10th Cir. 1996) ("[P]laintiff must show the defendant personally participated in the alleged violation, and conclusory allegations are not sufficient to state a constitutional violation.") (internal citation omitted).

1197, 1214 (10th Cir. 2000). Even if there were the requisite affirmative link between the alleged deprivations and Defendant Toliver, Defendant Toliver is entitled to summary judgment for the reasons discussed below.

### 1. Insufficient out-of-cell exercise

In Count 2 of the amended complaint (Dkt. # 50), Plaintiff complains that he was allowed only 1.5 hours of exercise at the exercise yard during his period of incarceration at CCJ. In addition, Plaintiff complains that he could not exercise in his cell "due to the jail did not meet square footage per inmate" required by state law.  He claims his "muscles and bones had deteriorated to the point it cause[d] him severe pain to walk." Id. In moving for summary judgment, Defendant Toliver explains that the exercise yard for the old CCJ was located approximately three (3) miles away from the jail. See Dkt. # 56 at 5. As a result, the provision of outdoor exercise was restricted as a result of serious issues of transportation and security. Id.

Under Bell v. Wolfish, 441 U.S. 520, 538-39 (1979), a court must determine whether a confinement condition or restriction is punitive by weighing the evidence that it is intended to punish, purposeless, or arbitrary against the possibility that it is "an incident of some other legitimate governmental purpose," such as "maintaining institutional security and preserving internal order." Simmons v. City of Philadelphia, 947 F.2d 1042, 1068 (3d Cir. 1991) (quoting Bell, 441 U.S. at 538, 546).  In this case, Plaintiff has provided no evidence suggesting that the restrictions on outdoor exercise at the exercise yard resulted from an intention by any Defendant to inflict punishment or that the restrictions were purposeless or arbitrary. In contrast, Defendant Toliver has offered evidence that the restrictions resulted from concerns for institutional security at the remote exercise yard. Defendant Toliver also states that while Plaintiff was incarcerated at CCJ, "inmates were often

taken for walks around the Courthouse grounds" and that the "[i]nmates were rotated out of the jail for exercise when uniformed deputies were available to provide appropriate security." See Dkt. # 56 at 5; Dkt. # 32, Affidavits of Sheriff Steve Toliver and Undersheriff Rick Ishmael. Defendant has also provided evidence that Plaintiff was transported for court appearances at least thirteen (13) times. See Dkt. # 20, Ex. G. Plaintiff does not deny Defendant's statements or otherwise refute the evidence. As a result, he has failed to controvert the evidence demonstrating that the restrictions on outdoor exercise were not intended to punish but were instead the result of legitimate penological safety concerns.  Defendant is entitled to summary judgment on this claim.

### 2. Inadequate medical care

In Count 3 of the amended complaint (Dkt. # 50), Plaintiff complains that Defendants denied medical treatment for a "skin disease," and that he was deprived of medications for "headaches, toothaches and colds." To state a § 1983 claim for a violation of a convicted prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to his serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 104 (1976). A pretrial detainee's right to receive adequate medical care is protected by the Fourteenth Amendment and the standard for evaluating his claim under the Fourteenth Amendment is the same. A plaintiff must allege "deliberate indifference to serious medical needs." Meade v. Grubbs, 841 F.2d 1512, 1530 (10th Cir. 1988); Garcia v. Salt Lake County, 768 F.2d 303, 307 (10th Cir. 1985).

"Deliberate indifference" is defined as knowing and disregarding an excessive risk to an inmate's health or safety.  Farmer, 511 U.S. at 827.  In Wilson v. Seiter, 501 U.S. 294 (1991), the Supreme Court clarified that the deliberate indifference standard under Estelle has two components: (1) an objective requirement that the pain or deprivation be sufficiently serious; and (2) a subjective

14

requirement that the offending officials act with a sufficiently culpable state of mind.  Id. at 298-99.

Negligence does not state a claim under § 1983 for deliberate indifference to medical needs.  Hicks

v. Frey, 992 F.2d 1450, 1455 (6th Cir. 1993).

The Court finds that Plaintiff has failed to establish the subjective requirement of the

deliberate indifference standard. Plaintiff complains that he suffered "excruciating pain from

headaches, toothaches and colds" but that jail officials provided "no cold pills, no aspirin and no

toothache medicine." See Dkt. # 41, Plaintiff's Affidavit at ¶ 7. He alleges that while he was at the

CCJ, he had a severe toothache which caused facial swelling, and that "defendants, named and

unnamed, would not take me to the dentist." Id.  He states "[a]ll my teeth were pulled at Lexington.

That's how bad my teeth was (sic) in the jail." Id. Plaintiff also complains that he was denied

medical treatment for a "skin disease that was infecting the entire jail." See Dkt. # 50. In moving

for summary judgment, Defendant Toliver indicates that medical services were available at the CCJ

upon request, but that Plaintiff's jail records contained neither emergency medical requests nor

requests for routine medical care.  See Dkt. # 56 at 9; Dkt. # 20, copy of Plaintiff's jail file attached

as Ex. K.  Significantly, Plaintiff does not claim that he ever filled out medical requests for any of

his medical conditions.[6] As evidence supporting his claims, Plaintiff directs the Court to "exhibit

WM-22," an exhibit attached to his response (Dkt. # 41) to Defendant's first motion for summary

judgment.  That exhibit consists of two (2) reports, one dated June 28, 2001, prepared by the medical

staff at Lexington Assessment and Reception Center ("LARC"), and the second dated July 3, 2001,

and prepared by dental staff upon Plaintiff's arrival in DOC custody. While the record provided by

---

[6]He claims he filled out grievances concerning the conditions at the CCJ, but that the jailers
threw them in the trash can.  See Dkt. # 41, Affidavit of William F. Mondier, Jr., ¶ 11.

Plaintiff confirms that upon arrival at LARC, he had a red rash on his left thigh and that he needed dental treatment, Plaintiff has failed to provide any evidence indicating that while he was in custody at the CCJ he followed CCJ procedures and filled out a request for either medical or dental care. As a result, Plaintiff has failed to establish the subjective component of deliberate indifference by showing that defendants knew of and disregarded an excessive risk to his health or safety. See Johnson v. Mullin, 422 F.3d 1184, 1186-87 (10th Cir. 2005) (finding defendants entitled to summary judgment on claim of inadequate dental care because defendants were never informed that plaintiff's situation constituted an emergency). As emphasized above, he has not demonstrated that he completed a request for medical or dental care, and as a result, he has failed to demonstrate that the appropriate jail officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]." Farmer, 511 U.S. at 837.

The Court concludes, therefore, that Plaintiff has failed to controvert the summary judgment evidence provided by Defendant.  Plaintiff has not demonstrated that Defendant Toliver, or any other defendant, possessed the requisite culpable state of mind. The evidence, viewed in the light most favorable to Plaintiff, fails to show that there exists a genuine issue of material fact as to this claim. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim related to inadequate medical care.

### 3. Prolonged overcrowding

In ground 5 of the amended complaint, Plaintiff complains that he was exposed to prolonged overcrowding.  He alleges he was subjected to extreme violence and lack of food as a result of the overcrowded conditions. See Dkt. # 50.

As indicated above, while the Due Process Clause of the Fourteenth Amendment guarantees

16

pre-trial detainees humane conditions of confinement, "the Eighth Amendment standard provides the benchmark for such claims." Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998). In order to hold a jailer personally liable for an alleged constitutional violation, a plaintiff must satisfy two requirements: (1) an objective element, requiring that "the alleged deprivation be sufficiently serious" and (2) a subjective element, which "requires the jail official to have a sufficiently culpable state of mind." Id. (quotation omitted). In the prison context, a sufficiently culpable state of mind "is one of deliberate indifference to inmate health and safety." Id. (quotation omitted).

Regarding the objective prong, overcrowding alone is not "sufficiently serious" to establish a constitutional violation. See Rhodes v. Chapman, 452 U.S. 337, 348-49 (1981) (finding that housing two inmates in a cell designed for one does not, without more, violate the Eighth Amendment). "[T]he Constitution does not mandate comfortable prisons. . . ." Id. at 349. "[O]nly those deprivations denying the minimal civilized measure of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson, 501 U.S. at 298 (quotation omitted).

In Count 5 of his amended complaint, Plaintiff alleges that the overcrowded conditions at CCJ resulted in inadequate food and in exposure to excessive violence. However, Plaintiff has provided no evidence supporting the objective prong of the standard. His claim of inadequate food is discussed in more detail below. In addition, although Plaintiff alleges he sustained black eyes and bruises during fights at the CCJ, he has provided no evidence to support his claim of excessive violence. He has provided no evidence demonstrating that conditions rose to the level of "conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834.

Regarding the second element, the subjective prong, Plaintiff's complaint is also deficient,

for Plaintiff has failed to produce evidence of deliberate indifference by any Defendant. There is nothing in the record to suggest that jail officials were aware that their placement of prisoners created excessive risks to inmate safety but nevertheless disregarded the possible risks. Farmer, 511 U.S. at 837. The record contains ample evidence that at times, the inmate population at the CCJ exceeded State Health Department limits and was overcrowded. Nothing indicates, however, that any defendant disregarded the possible risks. In his motion for summary judgment, Sheriff Toliver acknowledges that during the time Plaintiff was incarcerated at the jail, it "was an outdated facility and was sometimes overcrowded." See Dkt. # 56 at 4. Sheriff Toliver states, however, that he fulfilled his statutory obligation to inspect the jail and that on each occasion, he found the jail "to be operated in conformance with the policies and procedures in place at the time, and immediately addressed any identified problems with the staff." (Dkt. # 32, Ex. A at ¶ 13). In addition, the jail was regularly inspected by State Health Department representatives and identified deficiencies were corrected to the satisfaction of the jail inspector. Id. at ¶¶ 14, 15.  Sheriff Toliver also indicates that he worked to pass a sales tax to provide a new facility. See id. at ¶ 16; Dkt. # 56 at 5.  The sales tax passed in 2001 and a new facility with a capacity of 300 inmates is now open. Dkt. #s 32, Ex. A; and 56 at 5. In addition, the record contains a "Report of Complaint Investigation" prepared by a jail inspector following an inspection of the CCJ on May 17, 2001, in response to a complaint made by a relative of a prisoner. That report substantiated the complaint of overcrowding, made recommendations for correcting the problem, and indicated that a follow-up would occur on the next inspection. See Dkt. # 32, attached report. The report also determined that none of the remaining complaints, including not enough food, no medical help, dirty mattresses and not enough blankets, and inadequate ventilation, were substantiated.  Id.  Plaintiff has also provided records, see Dkt. #

41, attachments, in the form of correspondences from officials in the Creek County Sheriff's Office, confirming overcrowding at the CCJ. Those records, however, are dated August and October of 2001, or after Plaintiff had already been transferred to DOC custody. Even if the time period were applicable to Plaintiff's claims, the records clearly reflect diligent efforts made by the Creek County Sheriff's Office to address deficiencies at the jail and to ease overcrowding.

Plaintiff has not presented sufficient evidence from which a finder of fact could conclude that inmates generally were subjected to a substantial risk of serious harm during the times when the CCJ was overcrowded. Nor has he provided any evidence demonstrating that any Defendant was aware of and disregarded an excessive risk to his health or safety created by the overcrowded conditions. As acknowledged by Defendant Toliver, the CCJ was periodically overcrowded, but jail officials, including himself, took steps to work with Creek County officials to keep the jail population manageable and safe. The evidence, viewed in the light most favorable to Plaintiff, fails to show that there exists a genuine issue of material fact. Defendant is entitled to judgment as a matter of law.

### 4. Inadequate diet

As Count 15 of the amended complaint, Plaintiff alleges that he was provided an inadequate diet while in custody at the CCJ. He links this claim to the claim of prolonged overcrowding discussed above. Specifically, Plaintiff alleges that:

> there was little or no meat, no dairy, no fruit, no sweats (sic), no sugar or salt and no canteen. It was so overcrowded at times there was not enough food to serve. Plaintiff's bones and muscles had deteriorated to the point of severe pain to walk. Plaintiff at times was depressed and had symptoms of anxiety due to non-nutritious food and lack of exercise. Plaintiff noticed, and so could others, changes in his personality and physical appearance. Plaintiff gained 30 pounds after he left the county jail.

(Dkt. # 50).  In support of his claim, Plaintiff cites his own affidavit as well as the affidavit of his fellow inmate Augustin Martinez, Jr.  See Dkt. # 41.

Prison officials must ensure "inmates receive the basic necessities of [nutritionally] adequate food . . . ." Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998) (citing Farmer, 511 U.S. at 832-33); see also Thompson v. Gibson, 289 F.3d 1218, 1222 (10th Cir. 2002). "A substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim under the Eighth Amendment," Thompson, 289 F.3d at 1222, where the prison officials demonstrated "deliberate indifference," Estelle v. Gamble, 429 U.S. 97, 105 (1976). See also Helling v. McKinney, 509 U.S. 25, 35 (1993); Trujillo v. Williams, 465 F.3d 1210, 1227-28 (10th Cir. 2006).

In moving for summary judgment, Defendant Toliver states that Plaintiff's claim regarding small meal portions is "not only insufficiently serious, but also patently false." (Dkt. # 56). According to Defendant, the meals served at the jail met with guidelines promulgated by the State Health Department and the menus were approved by the jail inspector.  See Dkt. # 20, Exs. I and J. As discussed above, Defendant has also provided a "Report of Complaint Investigation," see Dkt. # 32, attached exhibit dated May 17, 2001, indicating that complaints of insufficient food and inmate weight loss were not substantiated. The inspector determined that "the diet appears to provide an adequate and wholesome meal. I did not find anyone who was losing weight." Id. at 2. As to Plaintiff's claim that he lost weight while at CCJ, Defendant has provided records indicating that when Plaintiff was booked-in at the CCJ, he was 5' 11" tall and weighed 140 pounds. See Dkt. # 56, Ex. A. Plaintiff's mug shot, dated March 17, 2000, reflects a thin, gaunt appearance.  In contrast, a DOC photograph dated June 28, 2001, or the date of Plaintiff's reception into DOC custody, reflects that Plaintiff's face and neck had filled out substantially. See id., Ex. B. The DOC record

also indicates that Plaintiff was 5' 8" tall and weighed 171 pounds, suggesting that Plaintiff lost 3"

of height and gained 30 pounds while in custody at the CCJ. Id.

In response to Defendant's motion for summary judgment, Plaintiff argues that there were

"no valid scales" at CCJ and that the information found in the book-in sheet was either obtained

from his license or the jail officials simply "guessed." (Dkt. # 62).  Plaintiff agrees that he weighed

171 pounds upon arriving in DOC custody, but then alleges that he gained 20-30 pounds within 2

months.  Id. Regardless of whether Plaintiff's weight changed while at CCJ, the Court finds that in

this case "a picture is worth a thousand words." The two photographs provided by Defendant show

that Plaintiff's physical appearance improved, rather than declined as alleged by Plaintiff, between

being booked-in at CCJ and being transferred to DOC custody. The photographs certainly do not

reflect a significant weight loss as alleged by Plaintiff. The Court finds Plaintiff has failed to

controvert Defendant's summary judgment evidence concerning the nutritional adequacy of meals

provided at CCJ. He has demonstrated neither a substantial deprivation of food nor deliberate

indifference by any defendant. Upon review of the evidence, in the light most favorable to Plaintiff,

the Court finds the evidence fails to show that there exists a genuine issue of material fact and

Defendant is entitled to judgment as a matter of law.

**D. Claims against Defendant Toliver in his official capacity as Sheriff of Creek County**

It is well established that Plaintiff's suit against Sheriff Toliver in his official capacity is

equivalent to a suit against Creek County itself.  See Kentucky v. Graham, 473 U.S. 159, 166 (1985)

("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the

entity.").  The Tenth Circuit has held that, "[A] plaintiff suing a county under section 1983 for the

actions of one of its officers must demonstrate two elements: (1) a municipal employee committed

a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation." Myers v. Okla. County Bd. of County Comm'rs, 151 F.3d 1313, 1318 (10th Cir. 1998).  Liability thus can be imposed on the County only if (1) a constitutional violation occurred, see City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam), and (2) the violation was caused by a government policy or custom, see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A government policy or custom may be manifested either in the acts of "its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Id. at 694.

In this case, the Court has determined above that Plaintiff has not demonstrated that a constitutional violation occurred. In addition, he has failed to present any evidence tying the alleged constitutional violations to county policies or customs.  The evidence provided by the parties and discussed above demonstrates that although the CCJ was an old, outdated facility, Defendant Toliver and other Creek County officials took steps necessary to keep the facility in compliance with applicable standards.  See Dkt. # 20, Exs. I, J; Dkt. # 32, attachments; Dkt. # 41, attachments to Plaintiff's response. The Court further finds that Plaintiff has failed to controvert the summary judgment evidence presented by Defendants as part of the Special Report. In considering Defendant Toliver's motion for summary judgment, the Court has examined the records and affidavits submitted by the parties.  Although Plaintiff responded to the motion, he presented no evidence to refute or controvert the facts in Defendant's motion, supporting brief, and the Special Report. Plaintiff's responses merely contain conclusory allegations that Defendant Toliver was deliberately indifferent (Dkt. # 62; Dkt. # 41 at 12-18), and Plaintiff's opinion that the jail conditions were constitutionally inadequate. As discussed above, many of the exhibits and information provided by

22

Plaintiff referred to dates subsequent to Plaintiff's incarceration at CCJ. See Dkt. # 41, Exs. WM 8-13.  Significantly, many of Plaintiff's own exhibits support Defendant Toliver's argument that he worked diligently to cure the deficiencies in the conditions at CCJ to bring the jail into compliance with applicable standards. See Dkt. # 41, Exs. WM-9, WM-10, WM-11, WM-12, and WM-16. In the absence of conflicting evidence, the Court concludes that Plaintiff has failed to show the existence of a genuine issue of material fact as to whether Defendant Toliver, in his official capacity as Sheriff of Creek County, violated his constitutional rights. Therefore, even if Plaintiff's allegations in counts 2, 3, 5, and 15 rose to the level of a constitutional violation, Defendant Toliver is entitled to judgment as a matter of law on Plaintiff's claims related to the adequacy of conditions at the jail.

**E. Request for punitive damages**

Lastly, the Court finds that Plaintiff has failed to allege facts sufficient to sustain a claim for punitive damages as to his claims against Defendant Toliver. The Tenth Circuit has recognized that, as a general rule, punitive damages may be recovered for a constitutional violation without a showing of compensable injury. See Searles v. Van Bebber, 251 F.3d 869, 880-81 (10th Cir. 2001). However, the legal standard for punitive damages in § 1983 cases is well established and is available only for conduct which is "shown to be motivated by an evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). In this case, Plaintiff's allegations against Defendants fall far short of demonstrating an evil motive or intent, or reckless or callous indifference to any of Plaintiff's federally protected rights. Plaintiff has failed to establish a violation of his constitutional rights which would rise to the standard required for a consideration of punitive damages.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1.     Defendant Toliver's motion for summary judgment (Dkt. # 57) is **granted**.

2.     Defendant Toliver's motion to dismiss (Dkt. # 56) is **declared moot**.

3.     This is a final Order terminating this action.

4.     A separate judgment in favor of Defendants shall be entered in this matter.


DATED THIS 27th day of March, 2008.

TERENCE KERN
UNITED STATES DISTRICT JUDGE

25